184     180
216     111
216     112

# Pittsburg & Birmingham Traction Company, Appellant, v. Monongahela Bridge Company.

*Contracts—Bridges—Acquisition of bridge by city—Corporation—Street railway companies.*

A street railway company advanced a large sum of money to a bridge company to enable the latter to reconstruct its bridge, so that trolley cars could be run over it. The contract under which the money was advanced provided that the debt was to be liquidated by tolls at a certain specified rate. The contract was to expire at the end of forty years, and if at that time the amount advanced had not been paid by tolls, the unpaid portion should be canceled. After the bridge had been reconstructed, and at a time when both parties were willing to carry out the contract, the city within whose limits it was situated commenced proceedings in the court of common pleas to condemn it, under the Act of Assembly of May 26, 1893, P. L. 154, authorizing cities . . . . to purchase, maintain, use and condemn bridges, etc., but afterwards determined to acquire the control of the bridge by the purchase of the entire capital stock of the bridge company, which it did, and held it in its own name, with the exception of thirteen shares placed in the names of certain city officials. Subsequently the street railway company brought an action against the bridge company to recover the portion of the money advanced which had not been repaid by tolls under the agreement. *Held*, that, whether the case should be treated as one

against the legally constituted bridge company, of which the city was the stockholder, or as substantially a suit against the city as the purchaser of the mere physical structure of the bridge, plaintiff was not entitled to recover.

Argued Nov. 2, 1897. Appeal, No. 157, Oct. T., 1897, by plaintiff, from judgment of C. P. No. 1, Allegheny Co., June T., 1896, No. 530, on trial by court without a jury. Before STER-RETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Assumpsit to recover money advanced. Before STOWE, P. J. The case was tried by the court without a jury.

At the trial it appeared that the Monongahela Bridge Company is a corporation under the laws of the state of Pennsylvania, and in pursuance of the powers given to it by its charter, maintained and operated a bridge over the Monongahela river, one of the termini being on Water street, at the foot of Smithfield street, in the old portion of the city of Pittsburg, and the other being on the south side of said city on Carson street. Prior to the year 1889, the Pittsburg & Birmingham Passenger Railway Company, a corporation under the laws of the state of Pennsylvania, was the owner of and operated a horse passenger railway which ran along Smithfield street and over the bridge of the defendant corporation. In the year 1889, the passenger railway company desired to change its motive power from horses to cable, and the bridge as then constructed being such that cable power could not be used in crossing it, the railway company requested the bridge company to make such changes in the bridge as would fit it for the use of cable cars, the changes necessary to be made were agreed upon, and a contract entered into between the Pittsburg and Birmingham Traction Company, which stood in the place of the Pittsburg & Birmingham Passenger Railway Company, and the Monongahela Bridge Company, which authorized the use of electricity as a motive power in addition to the cable.

Under this contract, the bridge company was to build an addition to the bridge especially for the use of the traction company, and the railway company agreed to advance $185,000 for that purpose. This money was advanced and the addition was built at an expense to the bridge company of $206,279.25. Under

the terms of the contract the traction company was to have the use of the addition to the bridge on certain terms specified, for a period not longer than forty years. The sum advanced was to be repaid by the bridge company to the traction company in tolls, but it was to bear a rebate, drawback or interest, at the rate of five per cent per annum, to commence as soon as the cars commenced running over the bridge, but the money advanced as tolls and rebate, drawback or interest thereon was to be recouped or offset, and liquidated by tolls at $7\frac{1}{2}$ cents for a single trip or passage, the tolls to aggregate not less than $15,000 per annum for seven years, and $17,000 thereafter, during the term of the contract, which was to "expire at the end of forty years from this date, and if the amount expended for reconstruction is not then fully extinguished by reason of increased revenue from the said tolls, the unpaid portion thereof shall be canceled."

The addition to the bridge having been completed, the traction company took possession and began to run its cars over the addition on the terms provided in the contract, and this continued to be the relation of the parties until April 11, 1896, at which time there remained unpaid of the $185,000 the sum of $152,582.31, which is claimed in this suit.

On May 26, 1893, an act of assembly was approved (P. L. 154) authorizing cities of this commonwealth to purchase, maintain, use and condemn bridges erected and in use over rivers and streams separating or dividing any part or district of such cities, and providing the manner in which compensation shall be made.

After the passage of this act the city of Pittsburg, through its councils, enacted an ordinance, authorizing the issue of bonds for the purpose of erecting and purchasing bridges for public use. Subsequently condemnation proceedings were instituted, and the viewers found the damage to the bridge corporation to be $1,286,254.20. The councils regarded this valuation as excessive, and enacted an ordinance authorizing the controller of the city to acquire an absolute and unconditional title to the bridge and all the franchises, together with the approaches and appurtenances thereto, by the purchase of the entire stock of the bridge company for $750,000 cash, and the assumption by the city of $250,000 of bonded indebtedness. In pursuance of this ordinance the city of Pittsburg bought all the stock of the cor-

poration and took title in its own name to all the shares except thirteen, which were assigned, one each to thirteen city officials, who became the officers and directors of the bridge company.

The court filed the following opinion.

Without entering into detail as to the powers of the plaintiff and defendant under their respective charters, it is sufficient to say that under the facts agreed upon and herewith returned and made a part hereof, they were fully authorized by their charters to do all the acts and to enter into all the agreements involved in the disposition of this case.

The contracts between the defendant and plaintiff were admittedly such as they could make, and in pursuance thereof the defendant reconstructed its bridge so as to provide a good and sufficient passage or roadway, to enable cars to cross upon double tracks, propelled by electricity or traction, according to the plans and specifications made part of said contracts. Under said agreements the plaintiff was to furnish the money to defendant with which the defendant was to pay the cost of reconstruction, not exceeding $185,000, to wit, $50,000 to be deposited by the plaintiff to defendant at the time of the execution of the contract; an additional instalment of $50,000 to be deposited in like manner upon three days' notice in writing from the treasurer of defendant " in order to meet the payments for said reconstruction," etc., and to be checked out and used for that purpose by said treasurer of the party of the first part. And the money thus paid by said party of the second part (plaintiff) is to be in payment of tolls in advance for crossing said bridge by the cars of said party of the second part, and being advanced, is to bear a rebate, drawback or interest at the rate of five per cent. per annum, to commence to run as soon as the cars are in operation and running over the bridge, but this money advanced as tolls, and the rebate, drawback or interest thereon, is to be recouped or offset and liquidated by tolls, in the following manner :

" The tolls shall be $7\frac{1}{2}$ cents for a single trip or passage," etc. Then follows a provision that the tolls shall aggregate not less than $15,000 per annum for seven years, and $17,000 thereafter during the term of the contract, and another in reference to settlements every six months. The agreement then declares :

" Sixth. It is understood and agreed that this contract shall expire at the end of forty years from this date, and if the amount expended for reconstruction is not then fully extinguished by reason of increased revenue from said tolls, the unpaid portion shall be canceled."

The cost of the reconstruction of the bridge by defendant exceeded $200,000. The plaintiff fully complied with its portion of the contracts, and has ever since been using said bridge as provided for in said contracts, and the defendant has also fully carried out its part of the same, and now avers that it is willing and able to continue to do so.

It appears, however, that in April, 1896, the city of Pittsburg purchased and paid for the entire capital stock of the bridge company, (and that the same, except thirteen shares, which is in the name of thirteen of the officials of the city, having one share each, is now held in the name of said city), subject to the rights arising under said contracts, and also a mortgage upon the bridge itself.

Of course, whether there was an agreement to that effect in terms or not, the city in purchasing the stock as it did would take it subject to the obligations of the bridge company arising under the agreements referred to.

The question now arises, has the plaintiff a right to recover back a portion of the money advanced by it to the defendant? The amount (if anything) is admitted to be $152,583.31, with interest from April 12, 1896.

It may possibly be that the franchises of the defendant company are no longer in existence, and that all the city gets by the purchase of the stock is nothing more than she would have gotten under condemnation proceedings under the act of assembly, and that in fact there is no bridge company, except the one from which the city purchased, but if so, how can it affect the case in favor of the plaintiff? It sues defendant as the rightful corporate company. We cannot inquire, so far as I can see, what right we have to inquire into who constitute the stockholders. A judgment against the company would be good against whoever owns the stock, and the question as to whether there is any longer a corporation vested with the franchises of the Monongahela Bridge Company cannot be tried in this proceeding.

The simple question appears to be whether the defendant, assuming it to be to all intents and purposes the Monongahela Bridge Company, having all its charter rights, and being bound by its contracts, is liable to refund plaintiff the money claimed by it. Of course if any set of individuals had purchased the stock the claim would have no force whatever, and I do not see how we can here treat this as any other than the ordinary sale of all the stock of a corporation by one set of owners to another. Whether or not under condemnation proceedings, where the actual value of the bridge and its franchises could have been taken, the lien of the mortgage and all other contract rights would have divested, and if so, the right of parties interested to be compensated out of the fund, is apart from anything involved in this case, and is not entitled to our consideration.

The act contemplates acquisition by agreement, and there seems to be no restriction upon the city making its own terms. And even if we treat this as a purchase by the city of the corpus of the bridge only, without the franchises belonging to the company, passing by the sale, it seems to me that the plaintiff would have no right to recover in this action.

So whether we treat this as a case against the legally constituted Monongahela Bridge Company, of which the city is the stockholder, or as substantially a suit against the city as the purchaser of the mere physical structure pertaining to the bridge, I am of opinion that plaintiff cannot recover, and therefore is entitled to judgment against plaintiff in favor of defendant with costs of suit.

*Error assigned* among others was in entering judgment for defendant.

*J. S. Ferguson*, with him *E. G. Ferguson* and *A. W. Duff*, for appellant. The Monongahela Bridge Company as a corporation has never been dissolved, but remains in full life and being. It certainly cannot be successfully contended that if the defendant company had been dissolved, and its bridge, for instance, destroyed, the plaintiff could not collect out of the assets of the bridge corporation, the sum claimed in this case under the terms of the contract.

It will be observed that there is no provision in the act of

assembly which authorizes any city in the commonwealth to which it relates to buy the stock of any bridge company, or to deal with anybody but the owners of the bridge, to wit: the corporation.

Where a party has either expressly or impliedly undertaken, without any qualification, to do anything, and does not do it, he must make compensation in damages, though the performance was rendered impracticable by some unforeseen cause over which he had no control: Ford v. Cotesworth, L. R. 4 Q. B. Cases, 134; School Dist. v. Dauchy, 25 Conn. 535; Hand v. Baynes, 4 Wharton, 204; Bank v. Burt, 5 Allen, 113; Walton v. Waterhouse, 2 Saund. 422; Atkinson v. Ritchie, 10 East, 530; Barker v. Hodgson, 3 M. & S. 267; Beebe v. Johnson, 19 Wend. 500; Phillips v. Stevens, 16 Mass. 238; Jones v. United States, 96 U. S. 24; Hocking v. Hamilton, 158 Pa. 107.

Manifestly the city of Pittsburg, with a limited authority, to wit: an authority to buy a bridge and make it free, could neither directly nor indirectly impose tolls upon the traction company, or any other portion of the public.

*D. T. Watson,* with him *James H. Beal* and *Clarence Burleigh,* for appellee, were not heard, but argued in their printed brief: The plaintiff must show, in order to recover, that the Monongahela Bridge Company has broken its contract with the Pittsburg & Birmingham Traction Company, and this it has not done.

The existence of the corporation, the Monongahela Bridge Company, cannot be denied or questioned in this case: Herman on Estoppel, 1411; Ry. v. McCarthy, 96 U. S. 267; Greeley v. Thomas, 56 Pa. 35; Cochran v. Arnold, 58 Pa. 399; Irvine v. Lumbermen's Bank, 2 W. & S. 204; West. Penna. R. R. Co.'s App., 104 Pa. 399; 2 Morawetz on Corporations, sec. 1015.

The fact that the city of Pittsburg is the owner of the stock of the Monongahela Bridge Company is immaterial in the case, because the ownership of said stock does not vest in said city the ownership of the property of said bridge company, nor does it affect the contractual relation between the traction company and the bridge company: Cook on Stock and Stockholders (3d ed.), sec. 6; Fitzgerald v. Missouri Pacific Ry. Co., 45 Fed. Rep. 814; Atchison, etc., R. R. v. Cochran, 23 Pac. Rep. 151; Jones v. Davis, 35 Ohio, 477; Field v. Pierce, 102 Mass. 261;

Jermain v. Ry. Co. 91 N. Y. 492; 1 Morawetz on Corporations, sec. 233; Union Trust Co. v. Coleman, 12 L. R. A. 762; Button v. Hoffman, 61 Wis. 20; Baldwin v. Canfield, 26 Minn. 44; Bidwell v. P. O. & E. L. Pass. Ry., 114 Pa. 541; Humphreys v. McKissock, 140 U. S. 304; England v. Dearborn, 141 Mass. 590.

The Monongahela Bridge Company being still in existence, and owning this bridge, it has a right to make the bridge free, wholly, or to any extent to which it sees fit, and the traction company is not injured thereby, and cannot be heard to complain: Hayes v. Missouri, 120 U. S. 68; Walston v. Nevin, 128 U. S. 578; Barbier v. Connolly, 113 U. S. 27.

The city had a right to acquire control of this highway bridge by purchasing the entire capital stock of the bridge company; and it had that right independent of the act of 1893: Wheeler v. Phila., 77 Pa. 338; Speer v. School Directors, 50 Pa. 163; Wilkesbarre Hospital v. Luzerne County, 84 Pa. 59; Franklin Alter v. Cincinnati, 38 Ohio Law Jour. 161.

The city had the right to make the purchase independent of the act of 1893: Mullarky v. Cedar Falls, 19 Iowa, 21; 2 Dillon on Municipal Corporations, sec. 728; Act of March 18, 1816, P. L. 160.

The city also had the power under the act of 1893 to purchase the stock.

The purchase by the city was expressly subject to these contracts, and the city had a right so to purchase, and so long as the contracts are performed on its part by the bridge company or the city, the traction company is not injured, and cannot complain: Pa. R. R. v. Reichert, 58 Md. 261; Chicago, etc., R. R. v. Joliet, etc., Ry., 105 Ill. 388; Hayes v. Ottawa, etc., R. R., 54 Ill. 373; Knoll v. Ry., 121 Pa. 467; Phila., etc., R. R. v. Pa., etc., R. R., 151 Pa. 569.

The contract itself provides an exclusive method for the recoupment or repayment of the advance made by the traction company to the bridge company, to wit: the right to cross the bridge with its cars, practically free of tolls, for forty years, and no other method of payment can be demanded by the plaintiff.

PER CURIAM, January 3, 1898:

By agreement duly filed, trial by jury was dispensed with

and the decision of this case submitted to the court below under the provisions of the act of April 22, 1874, P. L. 109.

A careful consideration of the record has convinced us that the general conclusion reached by the learned president of the common pleas is correct, and hence there was no error in entering judgment in favor of the defendant. In any view that can be reasonably taken of the facts the plaintiff company was not entitled to recover. We find nothing in any of the questions involved in the specifications of error that requires special notice.

Judgment affirmed.